In the Matter of the Workers' Compensation Claim of Clinton L. WAREHIME, an Employee of Douglas Roofing.

Clinton L. WAREHIME, Appellant (Employee–Petitioner),

v.

STATE of Wyoming ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector–Respondent).

No. 90–214.

Supreme Court of Wyoming.

Feb. 22, 1991.

George Santini of Graves, Santini & Villemez, P.C., Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Josephine T. Porter, Sr. Asst. Atty. Gen., Ron Arnold, and J.C. DeMers, Sr. Asst. Attys. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

MACY, Justice.

Appellant Clinton L. Warehime appeals from an order of the district court affirming the hearing officer's order, which determined that his petition to reopen his claim for the purpose of obtaining permanent total disability benefits was *res judicata* and that he had failed to demonstrate a "mistake" as contemplated by Wyo.Stat. § 27–14–605 (1977).

We reverse and remand.

Warehime raises these issues:

1. Did the hearing officer err as a matter of law in holding that Appellant failed to meet his burden of proof to show an increase of incapacity or mistake to justify a reopening of his workers' compensation case and an award of permanent total disability?

2. Did the hearing officer err in refusing to modify Claimant's award of permanent partial disability where the parties by stipulation have agreed Appellant would not be precluded from seeking modification of the award on the grounds of an increase of incapacity due solely to the injury, mistake or fraud?

3. Does a mutual mistake of fact regarding an injured worker's potential for retraining and competitive employment justify reopening a disability award granted on the basis of a stipulation of the parties?

In response, Appellee State of Wyoming ex rel. Wyoming Workers' Compensation Division contends:

I. Whether the order of the district court on August 4, 1987 is entitled to

finality and *res judicata* as between the parties.

II(a). Whether there was sufficient evidence to support the administrative hearing examiner's conclusions that the Appellant failed to meet his burden of proof pursuant to section 27–12–606, W.S.1977, and section 27–14–605, W.S. 1986, in that Appellant had demonstrated no mistake of material fact by the fact finder.

II(b). Whether there is substantial evidence to support the administrative hearing examiner's conclusion that the Appellant had failed to meet his burden of proof to demonstrate and show an increase in incapacity to justify setting aside the order signed by the district court on August 4, 1987.

On February 2, 1984, Warehime suffered various broken bones and eye injuries as well as back and shoulder injuries when he fell from a ladder while he was performing work for his employer, Douglass Roofing Company. After receiving a variety of worker's compensation benefits over a period of three years, Warehime filed a petition in the district court on February 17, 1987, seeking permanent total disability benefits. Pursuant to a stipulation between Warehime and the Workers' Compensation Division, the district court entered an order on August 4, 1987, awarding an additional fifty percent permanent partial disability. The provision of the stipulation upon which the parties are focusing is:

14. That Employee–Claimant is not precluded from modifying this award pursuant to Section 27–12–606, W.S.1977, or Section 27–14–605, W.S.1986, if he later experiences an increase in incapacity due solely to the injury or upon the grounds of mistake or fraud[.]

The quoted provision merely states that the workman has a right to reopen his case. The significance of that provision must be discerned from the totality of the circumstances surrounding the entry of the August 4, 1987, order. The stipulation stated that Warehime had worked as a roofer for ten years and that before then he had performed other manual labor. Further, it referred to a vocational evaluation which indicated that Warehime had very little education, read at a first grade level, and had arithmetic skills at a fourth grade level. The evaluation stated, without any disagreement from the Workers' Compensation Division, that Warehime could not perform his previous occupations and that his future employment would be limited to selective placement or on-the-job-training at a sedentary job. The stipulation provided that Warehime would participate in a reading program and a vocational rehabilitation program for the purpose of improving his opportunities for employment. The stipulation and its attendant order were premised upon reports from International Rehabilitation Associates, Inc., which were completed in June and July of 1987. One of these reports disclosed that Warehime might be able to do ten percent of the jobs listed in the Dictionary of Occupational Titles (before the injury, he might have been able to do twenty-five percent of the jobs listed). The report reflected the opinion that Warehime was employable within the restrictions detailed in the report.

In a letter dated June 20, 1988, the Colorado Department of Social Services Bureau of Rehabilitation and Work Programs [1] informed Warehime that he was ineligible for further participation in the vocational rehabilitation program because the medical information, along with the results of the vocational and physical capacities programs, caused the Department of Social Services to conclude that Warehime's capacity to benefit from competitive employment was nonexistent. It is noteworthy that a vocational evaluator at the University of Northern Colorado Rehabilitative Services Clinic included the following in her report:

ations were performed in Colorado, and Warehime was in a vocational rehabilitation program in Colorado.

---

1. Although Warehime was injured while he was working in Cheyenne, Wyoming, he was a resident of Colorado. His employer was also a resident of Colorado. Hence, most of the evalu-

Positive work-related behaviors noted by the evaluator for Mr. Warehime included:

1. Highly motivated
2. Strong desire to work
3. Persistent on all assigned tasks
4. Friendly personality

Unfortunately, that evaluator concluded that Warehime would not benefit from competitive employment.

With that information available to him, Warehime filed a claim with the Workers' Compensation Division on July 22, 1988, seeking permanent total disability benefits. The Workers' Compensation Division denied the claim, and Warehime objected to that denial. A hearing officer also denied the claim, and Warehime filed a petition for review with the district court. The district court remanded the case back to the hearing officer for additional findings. The hearing officer made the following pertinent findings:[2] (1) The testimony and exhibits produced at the hearing reaffirmed the previous finding that Warehime suffered from a severe vocational handicap as the result of his work related injury; (2) Warehime failed to prove that he suffered from an increase in incapacity which would justify setting aside the August 4, 1987, order; (3) Warehime failed to demonstrate that the fact finder made a mistake regarding a material fact; and (4) the award made by the district court on August 4, 1987, must be treated as being final. The hearing officer concluded that Warehime had failed to prove grounds for an increase in benefits and denied his claim.

Those findings were reviewed by the district court. In its opinion letter, the district court concluded that the findings were supported by substantial evidence and that the hearing officer's conclusions of law were in accordance with the law. The court affirmed the denial, and Warehime filed this appeal.

2. The second findings incorporated the original findings.

3. The original proceeding was held in the district court, but the second proceeding was held before a hearing officer due to a change in the

First, we will address the Workers' Compensation Division's assertion that Warehime's claim is *res judicata*, precluding the hearing officer from considering the petition. In *Midwest Refining Co. v. George*, 41 Wyo. 55, 281 P. 1005 (1929), we were confronted with similar facts. In that case, we stated, concerning the stipulation between the parties, that we may

for the purposes of this case, but no further, concede that counsel for the employer gave his consent, applicable throughout the case, to have the cause reopened for the purpose of trying out the question as to whether or not the employee had grown worse within the meaning of the stipulation between the parties, and that the court by that consent acquired jurisdiction for that purpose.

*Midwest Refining Co.*, 41 Wyo. at 70, 281 P. 1005. We follow that decision and hold that, by entering into the stipulation, the Workers' Compensation Division gave its consent to further proceedings in the proper forum.[3]

Next, we address the substantiality of the evidence presented by Warehime in support of his contention that a mistake occurred which justified reopening his case. In *Woodman v. Grace Bomac Drilling*, 736 P.2d 313, 315 (Wyo.1987) (quoting *Conn v. Ed Wederski Construction Company*, 668 P.2d 649, 652 (Wyo.1983)), we reiterated our holding that Wyo.Stat. § 27–12–606 (1977), *repealed and recreated as* § 27–14–605 *by* 1986 Wyo.Sp.Sess. Laws ch. 3, § 3 (effective July 1, 1987), provided a mechanism for a worker in applying for benefits " 'subject only to the requirement of showing an increase or decrease in incapacity due solely to the injury, or mistake, or fraud.' " Warehime had the same burden of proof as exists in original claims; i.e., he was bound to demonstrate by a preponderance of the evidence that, through an increase in incapacity due

worker's compensation laws. Wyo.Stat. § 27–14–602 (1977), *amended by* 1989 Wyo.Sess. Laws ch. 264, § 2 (effective July 1, 1989) *and by* 1990 Wyo.Sess.Laws ch. 88, § 1 (effective March 21, 1990).

solely to the injury, mistake, or fraud, he was entitled to additional benefits. *Hohnholt v. Basin Electric Power Co-op,* 784 P.2d 233 (Wyo.1989); *Woodman,* 736 P.2d 313. We will review Warehime's claim by applying the following standard:

> We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence.

*Trout v. Wyoming Oil and Gas Conservation Commission,* 721 P.2d 1047, 1050 (Wyo.1986) (citation omitted). *See also Banda v. State ex rel. Wyoming Workers' Compensation Division,* 789 P.2d 124, 124–25 (Wyo.1990), and *Hohnholt,* 784 P.2d at 234.

Warehime contends that he is entitled to have his case reopened and to obtain an augmentation of his benefits because of mistake. We have held that the mistake must generally be one made by the fact finder—in this instance, the district court at the original proceeding. *Woodman,* 736 P.2d 313; 3 A. Larson, The Law of Workmen's Compensation § 81.52(b) (1989). We also agree with Professor Larson that a case should be reopened if both sides mistakenly assume that the claimant would be able to return to work and perform his old duties. 3 A. Larson, *supra.*

■ The district court was mistaken in its conclusion that Warehime was not totally disabled. The district judge noted on the order that he signed it "because stipulated by counsel. I believe this award to be excessive." Likewise, both parties mistakenly believed that Warehime would be able to find some sort of sedentary work with the assistance of a vocational rehabilitation program and reading classes. While initial evaluations of Warehime prognosticated a likelihood that he could benefit from vocational rehabilitation, Warehime demonstrat-ed that he could not perform any work because of his physical disabilities, his educational deficit, and his learning disabilities. We hold that Warehime carried his burden to prove by a preponderance of the evidence that a mistake was made. The hearing officer was compelled to find in favor of Warehime as there was no evidence to support any other finding.

In summary, we hold that the stipulation vitiated the Workers' Compensation Division's option to contest the reopening of this case on the grounds of *res judicata.* In addition, Warehime carried his burden to demonstrate the existence of a mistake which justified the reopening of his case and the award of additional benefits.

Reversed and remanded to the district court with directions that it be further remanded to the hearing examiner for issuance of an order awarding additional benefits consistent with this opinion.

THOMAS, J., filed a concurring opinion.

THOMAS, Justice, concurring.

I concur in the disposition of this case by reversal and remand with directions that the case be remanded to the hearing examiner for issuance of an order awarding additional benefits consistent with this opinion. I was not satisfied that the majority opinion, while it articulated the evidence supporting a mistake by the initial finder of fact, directly addressed the justification for the total permanent disability.

The parties did not present or argue the impact in this case of the "odd lot" doctrine. As that rule is traced through *Schepanovich v. U.S. Steel Corporation,* 669 P.2d 522 (Wyo.1983); *Rose v. Westates Construction Company,* 703 P.2d 1084 (Wyo.1985); and *City of Casper v. Bowdish,* 713 P.2d 763 (Wyo.1986), it appears to me that the "odd lot" doctrine justifies the conclusion that Warehime, in fact, was 100% totally disabled. It was mistakenly believed that he could benefit from a vocational rehabilitation program so that he might then be able to do 10% of the jobs listed in the Directory of Occupation Titles. That hope was not realized, however, and, in my judgment, the record demonstrated that Warehime had shown obvious physical

impairment coupled with other facts such as mental capacity, education, training, or age which would, *prima facie,* place him in the odd lot category. The burden of proof then would shift to the employer to show the availability of employment for which Warehime reasonably was suited. Viewed in that perspective, the evidence does substantiate Warehime's entitlement to permanent total disability.