868 P.2d 268 (1994)
In the Matter of the Worker's Compensation Claim of:
Annette BEARDEN, Appellant (Employee/Claimant),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector/Defendant).
No. 93-119.
Supreme Court of Wyoming.
February 9, 1994.
Robert A. Nicholas of Hettinger & Leedy, Riverton, representing the appellant.
Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Kenneth E. Spurrier, Asst. Atty. Gen., and Thomas C. Bancroft, Sp. Asst. Atty. Gen., representing the appellee.
Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.
MACY, Chief Justice.
Appellant Annette Bearden requested an administrative hearing after the Wyoming Workers' Compensation Division refused to pay part of her claimed medical bills. The hearing examiner denied Ms. Bearden's claim, and on appeal the district court affirmed the hearing examiner's decision. In essence, we are asked to determine whether substantial evidence existed to support the hearing examiner's conclusion that Ms. Bearden's neck injury was not a work-related compensable injury.
We affirm.
Ms. Bearden presents the following issues for our review:

*269 1. Is [Ms. Bearden's] cervical injury work related and therefore compensable under the Wyoming Worker[']s Compensation Act?
2. The underlying factual issue that must be resolved to answer this question is:
Did [Ms. Bearden's] original injury to her lumbar spine cause the subsequent injury to her cervical spine, and if so, is it compensable?
In February 1990, Ms. Bearden, then a Wyoming State Training School employee, injured her back while she was trying to break a disabled patient's fall. She promptly reported her back injury to her employer and began receiving medical treatment paid for by the Workers' Compensation Division.
Approximately four months later, as she was leaving her home to return a performance evaluation to her employer, Ms. Bearden tripped on a nail which was protruding from the floor of her porch. She fell, aggravated her back injury, and also injured her neck. Ms. Bearden did not report her neck injury to either her employer or the Workers' Compensation Division.
The Workers' Compensation Division continued to pay for Ms. Bearden's medical care until, approximately ten months after she injured her neck, she had her neck x-rayed and underwent an MRI in order to have her neck injury diagnosed. The Workers' Compensation Division denied Ms. Bearden's claim for payment of expenses related to the neck injury.
Ms. Bearden contends that, because she was on her way to deliver a performance evaluation to her employer, she injured her neck during the course of her employment and that the injury was, therefore, compensable. The hearing examiner found that Ms. Bearden was not acting within the scope of her employment when she tripped on the nail and that her neck injury was excluded from coverage by Wyo.Stat. § 27-14-102(a)(xi) (Supp.1993).
Section 27-14-102(a)(xi) defines "injury" for worker's compensation purposes:
(xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business.

Standard of Review
The scope of our review of administrative decisions is limited by Wyo.Stat. § 16-3-114(c) (1990). In this instance:
Our task is to examine the entire record to determine if substantial evidence exists to support the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions.
Romero v. Davy McKee Corporation, 854 P.2d 59, 61 (Wyo.1993) (citing Farman v. State ex rel. Wyoming Workers' Compensation Division, 841 P.2d 99, 102 (Wyo.1992)).
Ms. Bearden contends that her neck injury was compensable either because she was in the course of her employment at the time she injured her neck or alternatively because her work-related back injury caused her neck injury.

Course of Employment
Ms. Bearden testified at her hearing that she was required to return her performance evaluation, along with her comments, to her employer. She also testified that, by "go[ing] out of the house and get[ting] some air outside," she was following her doctor's order to become more active. The record fails to reveal that Ms. Bearden's employer or her doctor required her to hand deliver the evaluation. The record does reveal, however, that, when Ms. Bearden injured her neck, she was not in the course of her employment, in a place her employer required her to be, or in or about her employer's premises.
*270 We hold that the record contained substantial evidence to support the hearing examiner's findings that Ms. Bearden incurred her neck injury outside the scope of her employment and that compensation for her injury was thus excluded by § 27-14-102(a)(xi).

Work-Related Injury
Ms. Bearden also contends that her neck injury was compensable because her work-related back injury caused that injury. She claims that she tripped on the nail and injured her neck because the back injury caused her to drag her feet and because the back injury was her reason for hand delivering the evaluation.
As part of her burden of proof at the hearing, Ms. Bearden had to prove the existence of a causal connection between the neck injury and the course of her employment. Johnson v. State ex rel. Wyoming Worker's Compensation Division, 798 P.2d 323 (Wyo.1990). A "causal connection exists when there is a nexus between the injury and some condition, activity, environment or requirement of the employment." Id. at 325 (citing Baker v. Wendy's of Montana, Inc., 687 P.2d 885, 891 (Wyo.1984)).
Ms. Bearden testified at the hearing that, because of her back injury, she was dragging her feet when she tripped on the nail. The medical evidence considered by the hearing examiner,[1] however, gives conflicting accounts about Ms. Bearden's ability to walk. Two doctors examined Ms. Bearden after she injured her back and before she injured her neck. The first doctor reported three examinations: "3/20/90: . . . She really gets around quite well. . . . With ambulation, she walks normally"; "4/2/90: . . . She is walking well"; and "5/9/90: . . . Since she stopped taking the Feldene, she has noted increased back pain and some other psychosomatic type symptoms such as trembling, shaking, sweating and that sort of thing." The second doctor reported one examination: On April 6, 1990, "she says she can walk about fifteen feet and then she has to stop to rest because of the numbness increasing down the legs."
The hearing examiner must assess the credibility of the witnesses and weigh the evidence. We will not substitute our judgment for that of the hearing examiner if his decision is supported by substantial evidence. Romero, 854 P.2d at 61. We hold that the record contained sufficient evidence for the hearing examiner to find that Ms. Bearden's neck injury resulted from the condition of the house and not from her prior medical treatment or prior medical condition.
Ms. Bearden asks us to adopt a "quasi-course of employment" analysis used by other jurisdictions to test for compensable injuries. She claims that the hearing examiner did not apply this analysis and that, if he had, she would have prevailed.
Under the proposed test, injuries are compensable if they arise out of "quasi-course" activities. Those activities are defined as:
activities undertaken by the employee following upon his injury which, although they take place outside the time and space limits of the employment, and would not be considered employment activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury. "Reasonable" at this point relates not to the method used, but to the category of activity itself.
1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 13.11(d) at 3-542 (1993).
Contrary to Ms. Bearden's claim, however, the hearing examiner did consider the proposed test. He found:
The unusual fact situation of this case in which the employee is homebound because of an injury she incurred within the scope of her employment creates an expectation that any subsequent injury resulting from her initial injury would be covered. I do not disagree with this; however, in this case, it appears the injury was the result of a condition of her house when she tripped on a nail and fell when exiting that house. She was not within the scope of her employment. The injury she received was *271 not a result of her medical treatment nor medical condition and she certainly was not within the course of her employment.
In effect, the hearing examiner found that the "but for" causation requirement of the proposed test was not met, that Ms. Bearden did not hand deliver the evaluation form because she had a back injury, and that the back injury did not cause Ms. Bearden to injure her neck. Because the proposed test would not control the outcome of this case, we do not find it necessary to consider, in the abstract, the merit of the "quasi-course of employment" test proposed by Ms. Bearden.

Summary
The record contains substantial evidence to support the hearing examiner's findings that Ms. Bearden's neck injury did not arise out of or within the scope of her employment and that her earlier back injury did not cause her neck injury. The hearing examiner's findings were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Section 16-3-114(c).
Affirmed.
NOTES
[1] Ms. Bearden gave the only testimony at the hearing. The hearing examiner took judicial notice of the contents of the court file.