**UNITED STATES of America,**
Appellee–Cross–Appellant,

v.

**Gregory SCARPA, Jr., Defendant–
Appellant–Cross–Appellee.**

Nos. 99–1312, 99–1366.

United States Court of Appeals,
Second Circuit.

Feb. 26, 2001.

James E. Neuman, N.Y., NY, for appellant.

John R. Kroger, Ass't U.S. Att'y, EDNY, Brooklyn, NY, for appellee.

Present KEARSE, LEVAL and KATZMANN, Circuit Judges.

## SUMMARY ORDER

This cause came on to be heard on the record from the United States District Court for the Eastern District of New York, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.

Defendant Gregory Scarpa, Jr., appeals from a judgment entered in the United States District Court for the Eastern District of New York following a jury trial before Reena Raggi, *Judge*, convicting him of RICO conspiracy, in violation of 18 U.S.C. § 1962(c), financing extortionate

extensions of credit, in violation of 18 U.S.C. § 893, conspiracy to make extortionate extensions and collections of credit, in violation of 18 U.S.C. §§ 892 and 894(a)(1), respectively, conducting an illegal gambling business, in violation of 18 U.S.C. § 1955, and conspiracy to defraud the United States in the collection of income taxes, in violation of 18 U.S.C. § 371. In a downward departure from the Sentencing Guidelines ("Guidelines"), the district court sentenced Scarpa principally to 482 months' imprisonment, to be followed by a five-year term of supervised release. On appeal, Scarpa contends principally that his right to due process was violated by (a) the government's delay in indicting him, (b) the trial court's rulings with respect to John Napoli, a witness he wished to call who refused to testify on the ground of self-incrimination, and (c) the court's allowing the government to cross-examine Scarpa and present rebuttal evidence beyond the scope of Scarpa's direct examination. He also contends that the evidence was insufficient to show that he participated in the alleged conspiracies within the statutory periods of limitations. The government has cross-appealed, challenging the sentence imposed on Scarpa on the ground that the district court misapplied the Guidelines and that a correct application of the Guidelines would have resulted in a sentence of some 90 years. For the reasons that follow, we affirm.

*Scarpa's Appeal*

■ A defendant who seeks reversal of his conviction on the ground of preindictment delay bears the heavy burden of proving both that the government intentionally pursued such delay for "an improper purpose" and that the delay resulted in "actual prejudice," *United States v. Cornielle,* 171 F.3d 748, 752 (2d Cir.1999), *i.e.,* prejudice that is "definite and not speculative," *United States v. Birney,* 686

F.2d 102, 105–06 (2d Cir.1982); *see also United States v. Scarpa,* 913 F.2d 993, 1014 (2d Cir.1990); *United States v. Hoo,* 825 F.2d 667, 671 (2d Cir.1987), *cert. denied,* 484 U.S. 1035, 108 S.Ct. 742, 98 L.Ed.2d 777 (1988). It is not improper for the government to delay an indictment for "legitimate considerations, such as the need to obtain evidence and the difficulties that necessarily arise in a complex RICO investigation." *United States v. Hoo,* 825 F.2d at 671. In the present case, Scarpa has adduced no evidence that the government had an improper motive in the timing of his indictment, and we see no error in the district court's finding that the government did not delay the indictment in order to gain a tactical advantage.

■ Nor has Scarpa carried his heavy burden, *see, e.g., United States v. Abelis,* 146 F.3d 73, 80 (2d Cir.1998), *cert. denied,* 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999); *United States v. Desimone,* 119 F.3d 217, 223 (2d Cir.1997), *cert. denied,* 525 U.S. 874, 119 S.Ct. 174, 142 L.Ed.2d 142 (1998), of showing that the evidence was insufficient to prove conspiracy violations within the pertinent limitations periods (six years with respect to the tax conspiracy, *see* 26 U.S.C. § 6531(1); five years with respect to the other conspiracies, *see* 18 U.S.C. § 3282). There was ample proof that Scarpa, indicted in mid–1995, had been a member of each conspiracy and that the conspiracies extended into the pertinent five—or six-year period; although Scarpa contended that he was no longer a participant during the latter periods, his membership was presumed to continue unless he could prove that he had withdrawn, *see, e.g., Hyde v. United States,* 225 U.S. 347, 369–70, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); *United States v. Eisen,* 974 F.2d 246, 268 (2d Cir.1992), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1840, 123 L.Ed.2d 467 (1993). A member's mere

cessation of activity is not sufficient to establish his withdrawal, *see, e.g., United States v. Goldberg,* 401 F.2d 644, 648 (2d Cir.1968), *cert. denied,* 393 U.S. 1099, 89 S.Ct. 895, 21 L.Ed.2d 790 (1969), and in order to carry his burden, a defendant must show that he withdrew completely, *see, e.g., United States v. Salameh,* 152 F.3d 88, 150 (2d Cir.1998), that he took " 'some act that affirmatively established that he disavowed his criminal association with the conspiracy,' " *United States v. Eisen,* 974 F.2d at 268 (quoting *United States v. Minicone,* 960 F.2d 1099, 1108 (2d Cir.), *cert. denied,* 503 U.S. 950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992)), *i.e.,* an act "inconsistent with the object of the conspiracy," *United States v. Gypsum Co.,* 438 U.S. 422, 464, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), and that he communicated his disavowal to his coconspirators, *see, e.g., id.; United States v. Minicone,* 960 F.2d at 1108. Scarpa's evidence was insufficient to compel an inference of his withdrawal from the conspiracies. Although he testified at trial that in 1989 he told his father, "I'm washing my hands with everything. I don't want to do nothing with nothing. I don't want to know nobody," and argued that he was incarcerated during the 1990s and that his family did not receive money from crew members after 1989, the jury was entitled to disbelieve his testimony as to his disavowal and his lack of profit or participation and to find that he had not in fact withdrawn from the conspiracies.

Scarpa's various challenges to the district court's treatment of his potential witness Napoli do not require extended discussion. Scarpa concedes that his contention that the court should have compelled the government to grant Napoli immunity is foreclosed by this Circuit's precedents. We decline the invitation to overrule them. Nor has Scarpa shown that it was an abuse of discretion for the

court to decline to inform the jury that Napoli had invoked his Fifth Amendment privilege against self-incrimination, *see generally Johnson v. United States,* 318 U.S. 189, 196–97, 63 S.Ct. 549, 87 L.Ed. 704 (1943); *United States v. Deutsch,* 987 F.2d 878, 883 (2d Cir.1993), or to instruct the jury that Napoli was equally unavailable to both sides rather than that he was a witness whom the government could have called, *see, e.g., United States v. Torres,* 845 F.2d 1165, 1170–71 (2d Cir. 1988) ("Whether a missing witness charge should be given lies in the sound discretion of the trial court."); *United States v. Saa,* 859 F.2d 1067, 1076 (2d Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989). We conclude that Scarpa's contentions with respect to the treatment of Napoli do not present, either singly or in combination, a basis for reversal.

 Finally, we see no merit in Scarpa's contention that his privilege against self-incrimination and right to due process were violated by the breadth of the government's cross-examination of him or by its presentation of rebuttal testimony. A witness who chooses to testify is subject to cross-examination and impeachment on matters relevant to his direct testimony, *see, e.g., United States v. Payton,* 159 F.3d 49, 58–59 (2d Cir.1998), and as to those matters, he waives his privilege against self incrimination, *see, e.g., Brown v. United States,* 356 U.S. 148, 154–55, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958); *United States v. Conte,* 99 F.3d 60, 66 (2d Cir. 1996); *Bagby v. Kuhlman,* 932 F.2d 131, 135 (2d Cir.), *cert. denied,* 502 U.S. 926, 112 S.Ct. 341, 116 L.Ed.2d 281 (1991). A defendant who elects to testify is not allowed to "frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge," and the government is therefore given

"great leeway" in its cross-examination of a defendant. *United States v. Vega,* 589 F.2d 1147, 1151 n. 3 (2d Cir.1978) (internal quotation marks omitted). *See generally McGautha v. California,* 402 U.S. 183, 215, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) ("cross-examination [of a defendant is permitted] on matters reasonably related to the subject matter of his direct examination"), *vacated in part on other grounds sub nom. Crampton v. Ohio,* 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972).

In the present case, Scarpa testified to, *inter alia,* his general innocence with respect to his involvement in the activities of the Columbo organized crime family and his father's cooperation with law enforcement officials, and he sought to portray his conduct as having been approved by law enforcement officials in order to protect against disclosure of his father's cooperation. It was well within the bounds of the trial court's discretion to allow the government to cross-examine Scarpa with respect to murders—plainly not approved by law enforcement officials—in which he was complicitous. It was also within the scope of the trial court's wide discretion in determining what witnesses and testimony should be allowed on rebuttal, *see, e.g., United States v. Tejada,* 956 F.2d 1256, 1267 (2d Cir.), *cert. denied,* 506 U.S. 841, 113 S.Ct. 124, 121 L.Ed.2d 80 (1992), to allow the government to present rebuttal testimony from a law enforcement agent that Scarpa had admitted his involvement in two murder conspiracies.

*The Government's Cross–Appeal*

 We reject the government's cross-appeal because the factual premise of that appeal, *i.e.,* that the district court did not grant Scarpa a downward departure from the Guidelines, is belied by the district court record and because the government made no argument in its brief to challenge the propriety of a downward departure. "Counsel's obligations in advancing arguments on appeal are spelled out specifically in rule 28 of the Federal Rules of Appellate Procedure." *United States v. Restrepo,* 986 F.2d 1462, 1463 (2d Cir.), *cert. denied,* 510 U.S. 843, 114 S.Ct. 130, 126 L.Ed.2d 94 (1993). Rule 28 provides that an "appellant's brief must contain ... the argument, which must contain: appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed.R.App.P. 28(a)(9)(A). Points raised at oral argument but not in the appellant's brief are not properly before us, *see, e.g., Warren v. Garvin,* 219 F.3d 111, 113 n. 2 (2d Cir.) (" 'issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal' " (quoting *Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.), *cert. denied,* 525 U.S. 1001, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998))), *cert. denied,* 531 U.S. 968, 121 S.Ct. 404, 148 L.Ed.2d 312 (2000), and we may decline to entertain them, *see, e.g., Warren v. Garvin,* 219 F.3d at 113 n. 2 (declining to consider an issue addressed only at oral argument); *see generally United States v. Quiroz,* 22 F.3d 489, 491 (2d Cir.1994) (per curiam).

In the present case, the government filed and briefed its cross-appeal on the premise that the district court had not granted Scarpa a downward departure but instead had erred in applying the Guidelines. (*See, e.g.,* government brief on appeal at 66 ("Here, the sentence the district court fashioned does not fall within the applicable guideline range which, as the court recognized, called for life imprisonment. The court imposed a lesser sentence even though it had stated clearly that it did not intend to depart downward.")). The government's brief in support of its cross-appeal presents arguments only as to why the sentence imposed

was not within the proper Guidelines range; it contains no argument that the court failed to make the findings necessary to permit a downward departure. The sentencing transcript, however, was ambiguous as to whether the court viewed the sentence it was imposing as one within the Guidelines range or as a departure from the Guidelines; and that ambiguity was resolved by the written judgment, *see, e.g., United States v. Pagan,* 785 F.2d 378, 380 (2d Cir.1986) ("[a] commitment order may properly serve the function of resolving ambiguities in orally pronounced sentences" (internal quotation marks omitted)). In the judgment, the court checked the line stating that "the Court makes a DOWNWARD DEPARTURE." Hence, the sentence imposed in the present case was not an attempt to sentence Scarpa within the range prescribed by the Guidelines but was rather a departure from the Guidelines. At oral argument, the government acknowledged that it had not reviewed the written judgment prior to filing its cross-appeal and had not realized until Scarpa pointed it out at oral argument that the judgment of conviction stated that the sentence imposed was a departure.

In light of the fact that the government made no argument in its brief on appeal to challenge the propriety of the sentence as a departure, we decline to entertain its oral argumentation as to why the departure was impermissible.

We have considered all of the parties' contentions that are properly before us in support of their respective appeals and have found them to be without merit. The judgment of the district court is affirmed.